IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *

KIDDIE ACADEMY DOMESTIC
FRANCHISING LLC,
                                    *

        Plaintiff,
                                    *

            v.                          CIVIL NO.: WDQ-07-705
                                    *

FAITH ENTERPRISES DC, LLC,
 *et al.*,
                                    *

        Defendants.
                                    *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Kiddie Academy Domestic Franchising LLC ("Kiddie Academy")

sued Faith Enterprises DC, LLC ("Faith"), Hitter DC, LLC

("Hitter"), MMTD, LLC ("MMTD"), Michael and Kerry Maurer, and

Thomas O. and Cathleen Dodge for breach of contract.  The

Defendants counterclaimed against Kiddie Academy for fraudulent

inducement and negligent misrepresentation.  Pending are: (1)

Kiddie Academy's motion for summary judgment[1]; and (2) the

Defendants' motion to amend/correct answer with an amended

counterclaim.[2]  For the following reasons, the motion for summary

---

[1] On June 17, 2008, the Court granted Kiddie Academy's
motion to amend its complaint to include a claim for injunctive
relief against MMTD for violations of the Lanham Act and state
law.  Kiddie Academy has not sought summary judgment on that
claim.  *See* Pl. Mot. Summ. J.

[2] The Defendants' "motion to amend/correct answer with
amended counterclaim" is to (1) answer Count V of the Amended

1

judgment will be granted, and the Defendants' motion to
"amend/correct answer with amended counterclaim" will be granted
in part and denied in part.

I.    Background

Kiddie Academy franchises Kiddie Academy Child Care Learning
Centers, and has its principal place of business in Abingdon,
Maryland.  Pl. Mot. Summ. J., William Endres Decl. ¶ 2.  Faith,
Hitter, and MMTD are New York limited liability companies, and
the Maurers and Dodges are their principals.  *Id.* at Exs. A, C,
D.

In November 2004, Faith and Hitter began negotiations to buy
Kiddie Academy franchises in St. James, New York ("Flowerfield
Center") and East Setauket, New York ("East Setauket Center")
from Louis Perez.  *Id.* at Ex. J at 80.  Perez provided Faith and
Hitter monthly profit figures for the franchises, *Id.* at Ex. K,
and pro formas[3] for the Flowerfield and East Setauket Centers.
*Id.* at Ex. L.

On November 10, 2004, Mr. Maurer forwarded the pro formas to
Chris Commarota, a Kiddie Academy employee.  *Id.* at Ex. O at 4.
Maurer asked Commarota whether the figures were accurate, and

---

Complaint, and (2) amend their Counterclaim to state claims for
reimbursement plus interest for the purchase price of the
Flowerfield and East Setauket Kiddie Academy Centers and state a
claim for relief under § 680 of Article 33 of the New York
General Business Law.  Paper No. 113.

[3] Pro formas are predictions of future performance.

Commarota replied that "they look okay to me."  *Id.* Perez also sent the figures to Faith and Hitter's accountant.  *Id.*

On January 15, 2005, Faith and Hitter executed franchise agreements with Kiddie Academy for the Flowerfield and East Setauket Centers.  *Id.* at Ex. G.  In February 2005, Commarota told Dodge and Maurer that the general profitability of the centers was "in the mid to high teens."  Def. Resp. Cahn Decl. Ex. I at 30-37.  On March 31, 2005, Faith closed on the purchases.  Def. Resp., Maurer Decl. ¶ 20.  On August 8, 2005, MMTD executed a franchise agreement with Kiddie Academy for a Center in Islip, New York ("Islip Center").  Pl. Mot. Summ. J. Endres Decl. ¶ 4.

Between November 2006 and March 2007, Faith failed to pay $23,637,89 in royalties to Kiddie Academy.  Pl. Mot. Summ. J. Wise Decl. Ex. A.  Hitter failed to pay $85,115.39 in royalties to Kiddie Academy (1) for the weeks of October 2, 2006 and November 6, 2006, (2) between December 4, 2006 and February 19, 2007, and (3) from October 2007 through May 2008.  *Id.*  MMTD has failed to pay at least $11,988.92 in royalties to Kiddie Academy. Compl. ¶ 20.[4]  On March 19, 2007, Kiddie Academy sued the Defendants for breach of contract.  On June 28, 2007, the Defendants answered the Complaint and counterclaimed against

---

[4] On April 4, 2008, MMTD paid the past due royalty fees. Memorandum Opinion, Paper No. 80, at 3.

Kiddie Academy.

On January 29, 2008, the Court denied Kiddie Academy's motion to dismiss the counterclaim and granted the Defendants' motion to amend it.  On June 17, 2008, the Court denied Kiddie Academy's motion for a temporary restraining order and granted Kiddie Academy's motion to amend its complaint to include a claim for injunctive relief against MMTD.  On October 8, 2008, the Court denied Kiddie Academy's motion to direct reference to Bankruptcy Court.  On December 22, 2008, Kiddie Academy moved for summary judgment.  On January 12, 2009, the Defendants moved to "amend/correct answer with amended counterclaim."

II.  Analysis

A.   Kiddie Academy's Motion for Summary Judgment

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v.*

4

*Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  The

opposing party, however, must produce evidence upon which a

reasonable fact finder could rely.  *Celotex*, 477 U.S. at 324.  A

mere "scintilla" of evidence is insufficient to preclude summary

judgment.  *Anderson*, 477 U.S. at 252.

> 1.   The Fraudulent Inducement Counterclaim

The Defendants counterclaimed that Kiddie Academy

fraudulently induced them to enter into franchise agreements for

the Flower Field and East Setauket Centers.  Am. Answer at 3-8.

Kiddie Academy seeks summary judgment on that counterclaim.

To succeed on their counterclaim, the Defendants must show

by clear and convincing evidence[5] that Kiddie Academy: (1) made a

representation to the Defendants; (2) which it knew was false or

was made with reckless indifference to its truth; (3) with the

intent to defraud the Defendants; and (4) the Defendants

justifiably relied on the misrepresentation; and (5) suffered

compensable injury as a result.[6]  *Rozen v. Greenberg*, 165 Md.

---

[5] The "clear and convincing" standard may be defined as
highly probable.  *Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
952 F.2d 802, 810 (4th Cir. 1992).  "Clear and convincing proof
leaves no substantial doubt in [one's] mind, not only [that] the
proposition at issue is probable, but also that it is highly
probable."  *U.S. v. Thomas*,  No. CCB-03-0150, 2006 WL 140558, *8
(D. Md. Jan. 13, 2006).

[6] Kiddie Academy seeks summary judgment on the grounds that
there is insufficient evidence of (1) a false statement, (2)
knowledge, and (3) justifiable reliance.  Kiddie Academy does not
address the two remaining elements of fraudulent inducement,
intent and compensable injury.  *See Celotex*, 477 U.S. at 323 (a

App. 665, 674-75, 886 A.2d 924, 930 (Md. Ct. Spec. App. 2005); *7-Eleven, Inc. v. McEvoy*, 300 F.Supp.2d 352, 358 (D. Md. 2004).

> a.   Whether there were false representations?

The Defendants contend that Kiddie Academy falsely represented the financial condition of the Flowerfield and East Setauket Centers when its employee, Chris Commarota, said (1) that the pro formas prepared by the Centers' prior franchisee, Louis Perez, "look okay to me," Def. Resp. at 4-8; Maurer Decl. ¶ 17; and (2) the centers had a profitability rate in the "mid to high teens." Def. Resp. Cahn Decl. Ex. I at 30-37.

> 1.   Whether "They look okay to me" was a
>      false representation?

Kiddie Academy contends that (1) there is no evidence that Maurer sent the pro formas to Commarota, and (2) the pro formas and Commarota's statements are inadmissible hearsay.[7] Def. Mot. Summ. J. at 9-10; Def. Repl. at 1-2.

Michael Maurer has said that he emailed the pro formas to Commarota on November 10, 2004, and Commarota commented that they "looked okay" to him.[8] *Id.*, Maurer Decl. ¶ 23. He was unable to

---

failure of proof of an essential element of a nonmovant's claim makes all other facts immaterial).

[7] The parties appear to agree that the pro formas contain inaccuracies. *See* Pl. Mot. Summ. J.; Def. Repl.

[8] Maurer's declaration distinguishes this case from *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, where the party claiming fraud introduced "no affidavits, deposition excerts, answers to interrogatories, admissions on file, or

save a copy of the Hotmail email, and Hotmail couldn't retrieve
it.  *Id.*  A reasonable jury could find that Maurer sent the pro
formas to Commarota.

Kiddie Academy contends that the pro formas are inadmissible
hearsay[9] because they were not prepared by Kiddie Academy, have
not been adopted by Kiddie Academy, and are not certified
business records as required by Federal Rule of Evidence 803(6).
Def. Resp. at 1-2.  Kiddie Academy contends that because the
fact-finder will need to review the pro formas to determine
whether Commarota's statement that they "look okay to me" was
false, the documents should be excluded.  *Id.*

The pro formas and attached email were prepared by Perez, a
non-party, and are hearsay.  Arguably, however, Kiddie Academy
adopted the documents when its employee Commarota reviewed them
and said, "they look okay to me."[10]  Joseph M. McLaughlin, et

---

authenticated documents" in response to a summary judgment
motion.  33 F.3d 390, 392 (4th Cir. 1994).

[9] There is some authority that inadmissible hearsay may not
be considered on a motion for summary judgment.  *Md. Highways
Contractors Ass'n v. Md.*, 933 F.2d 1246, 1251-52 (4th Cir. 1991)
("hearsay evidence, which is inadmissible at trial, cannot be
considered on a motion for summary judgment") (citing *Rohrbough
v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973-74 n.8 (4th Cir.
1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.
1990); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563,
570 n.4 (7th Cir. 1989); *Pink Supply Corp. v. Hiebert, Inc.*, 788
F.2d 1313, 1319 (8th Cir. 1986)).

[10] Kiddie Academy cites Commarota's declaration that he never
received the pro formas and never stated, "they look okay to me,"
to support its contention that it did not adopt the pro formas.

al., WEINSTEIN'S FEDERAL EVIDENCE, SECOND EDITION (2008), § 801.31[1] (under Rule 801(d)(2)(B), a statement is not hearsay when offered against a party who has "manifested. . . belief in its truth") (*citing* Fed. R. Evid. 801(d)(2)(B)); *Id.* at § 801.31[3][c] (the meaning of a party's unclear response to a statement usually creates a question for the jury).

Because Kiddie Academy does not contest the inaccuracy of the pro formas, *see* Pl. Mot. Summ. J., Pl. Repl., a reasonable jury could find that defendant Kiddie Academy--through Commarota--made a false representation.

> 2.    Whether profitability in the "mid to high teens" was a false representation?

The Defendants contend that Commarota falsely represented that Kiddie Academy centers generally had profits in the "mid to high teens."  Def. Resp. Cahn Decl. Ex. I at 30-37.  The only evidence that this statement was false is testimony from Maurer and Dodge that other Kiddie Academy franchisees said that they were struggling financially.  Def. Resp. Maurer Decl. ¶ 25; Dodge Decl. ¶ 9.  This inadmissible hearsay would not bar summary judgment.  *Md. Highways Contractors Ass'n*, 933 F.2d at 1251-52.

---

Pl. Repl. at 2; Commarota Decl. ¶¶ 6-7.  As explained above, Maurer's testimony creates a genuine issue of material fact as to whether Commarota received the documents and commented "they look okay to me."

        b.    Whether the statements were made with
             knowledge of their falseness or reckless
             indifference to their truth?

Kiddie Academy contends that Commarota had no knowledge of the Flowerfield and East Setauket Centers' financial health and was not responsible for reviewing franchises' financial statements; thus his statement that the pro formas looked okay to him, could not have been knowingly false.  Pl. Mot. Summ. J. Commarota Decl. ¶¶ 2-4.

A reasonable jury could find that Commarota had knowingly or recklessly indifferently made a false statement because: (1) Commarota, as Chief Development Officer of Kiddie Academy, had knowledge of the Kiddie Academy franchises, *see* Pl. Mot. Summ. J. Commarota Decl. ¶ 2; (2) Kiddie Academy had financial statements for the Flowerfield and East Setauket Centers that differed from the pro formas, Def. Resp. Statement of Fact ¶¶ 24, 26, Ex. E; and (3) there had been sufficient time--several days--between Maurer's email and Commarota's response for Commarota to check the accuracy of the pro formas.  Def. Resp. Maurer Decl. ¶¶ 46, 47.

        c.    Whether the Defendants have shown justifiable
             reliance?

Kiddie Academy contends that the fraudulent inducement counterclaim fails as a matter of law because: (1) pro formas are merely predictions of future performance; (2) their possession of contrary financial reports made the Defendants' reliance on the

pro formas unreasonable; and (3) the Defendants could not have reasonably relied on a statement that a pro forma "looks okay to me." Pl. Mot. Summ. J. at 12.

### 1.   Are the Pro Formas Actionable?

"Predictions or statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud." *Miller v. Fairchild Indus*., 629 A.2d 1293, 1302 (Md. Ct. Spec. App. 1993) (internal citation omitted).

Kiddie Academy contends that the documents are predictions of future earnings and expenditures because (1) "pro forma" is commonly understood to express hypothetical information, (2) the Defendants received several pro formas with varying titles and financial projections, and (3)  the Defendants' accountant, Robert Lamont, advised Dodge that the pro formas were projections of future performance, not statements of past or present performance.  Def. Mot. Summ. J. at 13, Exs. L, M at 86.[11]

Maurer and Dodge have testified that they believed the pro forma labeled "As Is" was a statement of the Flowerfield Center's

---

[11] The Defendants received five pro formas from Louis Perez, the Flowerfield and East Setauket Centers's previous owner.  The first is labeled "Kiddie Academy of Flowerfield As Is Pro Forma Statement of 2005."  Def. Mot. Summ. J. Ex. L.  The second is labeled "Kiddie Academy of Flowerfield 10 Percent + Pro Forma Statement for 2005."  *Id.* The third is labeled "Kiddie Academy of Flowerfield 90 Percent Util. Pro Forma Statement for 2005."  *Id.* The fourth is labeled "Kiddie Academy of East Setauket Pro Forma Statement of 2005."  *Id.*  The fifth is labeled "Kiddie Academy of East Setauket Growth 10 percent + Pro Forma Statement for 2005." *Id.*

present income and expenditures, and have proffered the pro
formas and accompanying email from Perez, explaining that the "As
Is" pro forma represented "the current condition of Flowerfield."
Def. Resp. Cahn Decl. Ex. I at 59-61, Ex. J at 60; Pl. Mot. Summ.
J. Ex. L.

All the pro formas were labeled "2005."  Maurer has
testified that Perez told him that the "As Is" pro forma was
erroneously labeled "2005," and actually represented the
Flowerfield Center's 2004 performance.  Def. Resp. Ex. J at 86.
This inadmissible hearsay would not bar summary judgment.  *Md.
Highway Contractors Ass'n*, 933 F.2d at 1251-52.

Perez's email states that the "As Is' pro forma represents
"the current conditions of Flowerfield" in November, 2004.  Pl.
Mot. Summ. J. Ex. L.  This evidence creates an issue for the jury
and would bar summary judgment if all the other elements of the
fraudulent inducement claim were genuinely disputed.

> 2.   Whether there was reasonable reliance
>      upon the pro formas?

Kiddie Academy contends that the Defendants' reliance on
Commarota's statement was unreasonable because they (1) possessed
documents that contradicted the conclusions of the pro formas
when they relied on Commarota's statement, and (2) have
acknowledged that they were aware of the discrepancies between
the pro formas and other documents in their possession.

Although the recipient of a misrepresentation of fact is

justified in relying upon its truth, *Gross v. Sussex*, 332 Md. 247, 264-69 (Md. 1993), that reliance is not justified if, under the circumstances, he has discovered something which should serve as a warning that he is being deceived, and he has not made an investigation of his own. *Id.*

In October, 2004, Perez provided the Defendants with Kiddie Academy's 2003 and partial 2004 profit and loss statements for the Flowerfield and East Setauket Centers. Def. Resp. Ex. J. On November 29, 2004, Perez provided the Defendants with the 2001, 2002, and 2003 federal tax returns. Pl. Mot. Summ. J. Ex. K. Maurer has testified that upon receiving the profit and loss statements, he recognized that they contradicted the "As Is" pro forma. *Id.* at Ex. N at 38-39.

Although the Defendants received the tax returns (1) three weeks after they received the "As Is" pro forma and Commarota stated that it "looked okay to him," and (2) several days after they orally agreed to purchase Perez's centers, Pl. Mot. Summ. J. Dodge Decl. ¶ 2, they did not execute a purchase agreement with Perez until January 15, 2005, enter into a franchise agreement with Kiddie Academy until January 17, 2005, and close on the Flowerfield and East Setauket Centers until March 31, 2005. *Id.*, Ex. G, L, R, S.

The conflicting documents put the Defendants on notice of possible deception. *See* Def. Resp. Ex. J. at 37-38, 53-60,

Maurer Decl. ¶ 16. *Gross v. Sussex, Inc.* makes clear that reliance without investigation is unreasonable when a party to a contract discovers something that "should serve as a warning that he is being deceived." *Gross*, 332 Md. at 269, 630 A.2d 1167.

The Defendants' acknowledge that they did not ask Lamont, their accountant, to review the conflicting tax documents after Commarota stated that the pro formas looked "ok" to him. Def. Repl. at 15. The Defendants' reliance was unreasonable. *Gross*, 332 Md. at 269, 630 A.2d 1167.

2.   Whether the Defendants are entitled to the Fraudulent Inducement Affirmative Defense?

The Defendants contend that even if their fraudulent inducement counterclaim fails as a matter of law, their affirmative defense of fraud under New York state law remains.[12]

On January 29, 2008, the Court denied the motion to dismiss the Defendants' fraudulent inducement counterclaim because the

---

[12] Under Article 33 of the Business Law of the State of New York,

It is unlawful for a person, in connection with the offer, sale or purchase of any franchise, to directly or indirectly:. . . (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. It is an affirmative defense to one accused of omitting to state a such a material fact that said omission was not an intentional act.

New York Franchise Act, N.Y. Gen. Bus. Law Art. 33 § 687(2). The Defendants contend that Commarota failed to state material facts that "were necessary to make his 'it looks okay to me' comment not materially misleading under the circumstances [in which] it was made.'" Def. Resp. at 19.

franchise agreements contained a provision required by New York law that preserved the Defendants' right to bring a fraud claim despite a contrary contract provision.   Memorandum Opinion, Paper No. 36, at 9.   The Court also held that Maryland law governs interpretation of the franchise agreements.   *Id.* at 4.

These holdings merely acknowledged that the contract provision required by New York law "afford[ed] the franchisees the ability to pursue fraud claims against the franchisers." *Id.*, at 9.   As the Court noted, those fraud claims would be decided under Maryland law.   *Id.* at 4.   Accordingly, the Defendants may not assert the defense of fraudulent inducement under New York law.

> 3.   Whether the Defendants have established their
>       negligent misrepresentation counterclaim?

To succeed on their negligent misrepresentation counterclaim, the Defendants must prove that: (1) Kiddie Academy owed a duty of care to the Defendants and negligently made a false assertion of fact; (2) Kiddie Academy intended the Defendants rely on that assertion; (3) Kiddie Academy knew the Defendants would rely on it; (4) the Defendants justifiably acted in reliance on it; and (5) suffered injury.   *Griesi v. Atlantic Gen. Hosp. Corp.*, 360 Md. 1, 11, 756 A.2d 548, 553 (Md. 2000). The Defendants must demonstrate that the "speaker has a factual basis for his predictions so that the existence of facts is implied by the presentations."   *Ward Development Co., Inc. v.*

14

*Ingrao*, 63 Md.App. 645, 656, 493 A.2d 421, 427 (Md. Ct. Spec.
App. 1985).  Negligent misrepresentation may be proven by a
preponderance of the evidence.  *Griesi*, 360 Md. at 11, 756 A.2d
at 553.

As explained above, the Defendants' reliance on Commarota's
statement that the pro formas looked "okay" was unreasonable in
light of the conflicting tax returns that they received after the
statement and before the closing.  Summary judgment must be
granted for Kiddie Academy.

### 4.   The Plaintiff's Breach of Contract Claim

Kiddie Academy seeks summary judgment on its breach of
contract claims against Faith, Hitter, and MMTD.  In diversity
jurisdiction cases, a federal court must apply the choice of law
rules of the state in which it sits.  *Klaxon Co. v. Stentor
Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Maryland follows
the principle of *lex loci contractus*, which applies the law of
the state where the contract was made.  *Allstate Ins. Co. v.
Hart*, 327 Md. 526, 528, 611 A.2d 100, 101 (Md., 1992).  The
franchise agreements provide that they are to be construed under
Maryland law.  Pl. Mot. Summ. J. Ex. E, F, G, § 26.2.

Section 7.5 of the franchise agreements requires Faith,
Hitter, and MMTD to pay 7.5% of their gross weekly revenue to
Kiddie Academy.  Pl. Mot. Summ. J. Ex. G § 7.5.  Section 26.5 of
the franchise agreements states that Faith, Hitter, and MMTD are

15

required to reimburse Kiddie Academy "for all reasonable costs incurred . . . in pursuing the enforcement of this Agreement." *Id.* at § 26.5.  The franchise agreements state that such costs "shall include, but not be limited to, court costs, reasonable attorneys' fees, the reasonable value of [Kiddie Academy] employees' time, witness fees, and travel expenses . . ."  *Id.*

The Defendants concede that Faith failed to pay $23,637.89 of royalty fees between November 2006 and March 2007, *Id.*, Wise Decl. Ex. A; *see* Def. Resp., Statement of Facts, and that Hitter failed to pay $85,115.39 of royalty fees for various periods between October 2, 2006 and May 2008.  *Id.*  The Defendants do not concede Kiddie Academy's contention that it has spent over $400,000 "pursuing the enforcement" of the franchise agreements. Pl. Mot. Summ. J. Wise Decl. Ex. B; Def. Resp., Statement of Facts ¶ 8.

The Defendants contend that their breach of § 7.5 of the franchise agreements is excused by the affirmative defense of fraudulent inducement.[13]  Def. Resp. at 22.  Kiddie Academy contends that the Defendants' counterclaim of fraudulent

---

[13] The Defendants also pled negligent inducement as an affirmative defense, Am. Answer and Countercl. at 3, but argue only that the affirmative defense of fraudulent inducement precludes summary judgment on Kiddie Academy's breach of contract claim.  The Court declines to *sua sponte* consider the issue of negligent inducement as an affirmative defense precluding summary judgment.  *See Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995).

inducement does not excuse the breach.  Pl. Mot. Summ. J. at 17.

Upon discovering fraud, a party may: (1) promptly act to repudiate the agreement, return any benefits received and seek recision, or (2) continue to perform, thus ratifying the contract, in which case he or she may obtain damages to redress the injury inflicted by the fraud.  *Ellerin v. Fairfax Sav. Ass'n*, 78 Md. App. 92, 109, 552 A.2d 918, 927 (1989).  Fraud is an affirmative defense.  *See Alger Petroleum, Inc. v. Spedalere*, 83 Md. App. 66, 83, 573 A.2d 423, 432 (Md. Ct. Spec. App. 1990).

Fraud is also an affirmative defense that, if proven, bars a plaintiff from recovery.  *Liberty Mut. Ins. Co. v. Ben Lewis Plumbing, Heating & Air*, 121 Md. App. 467, 478, 710 A.2d 338, 344 (1998).  The Defendants pled fraudulent inducement as an affirmative defense and a counterclaim.  Amended Answer and Counterclaim at 2, 4-8.  Summary judgment will be granted for Kiddie Academy on the fraudulent inducement counterclaim; for the reasons discussed above, their affirmative defense must also fail, and summary judgment must be granted for Kiddie Academy.

B.   The Defendants' Motion to "Amend/Correct Answer with Amended Counterclaim"

The Defendants have moved to answer Count V of the Amended Complaint[14] and amend their Counterclaim to: (1) clarify and

---

[14] Count V is a Lanham Act and state law claim against MMTD for enforcement of (1) Kiddie Academy's termination of MMTD's franchise agreement and (2) MMTD's post-termination convenant against competition.  Paper No. 61 at 3.  Count V alleges that

amend their affirmative defense and counterclaim of fraudulent inducement; (2) state claims for reimbursement plus interest for the purchase price of the Flowerfield and East Setauket Kiddie Academy Centers; and (3) state a claim for relief under § 680 of Article 33 of the New York General Business Law.  Def. Mot. to Am. at 1.

Under Rule 15(a), after a responsive pleading has been served, a party may only amend a pleading with leave of the Court; "[t]he court should freely give leave when justice so requires."  FED. R. CIV. PROC. 15(a).  "'[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (*quoting Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Kiddie Academy contends that the Defendants' new factual allegation and New York state law claim will be futile because

---

after Kiddie Academy terminated MMTD's franchise agreement, MMTD continued to hold itself out to the public as an authorized provider of Kiddie Academy services, continued to use Kiddie Academy proprietary systems, and refused to comply with its post-termination covenants.  *Id.* at 2.  Count V also alleges that MMTD continued to use Kiddie Academy trademarks after its franchise agreement was terminated, and that MMTD has caused customer confusion.  *Id.* at 3.  The Defendants' proposed answer to Count V denies the allegations.

their fraudulent inducement counterclaim fails as a matter of law.  For the reasons explained above, summary judgment for Kiddie Academy on the fraudulent inducement counterclaim will be granted.  The Defendants' motion to "amend/correct answer with amended counterclaim" will be granted only to allow the Defendants to answer Count V of the Amended Complaint.

III. Conclusion

For the reasons stated above, Kiddie Academy's motion for summary judgment will be granted.  The Defendants' motion to "amend/correct answer with amended counterclaim" will be granted to allow the Defendants to answer Count V of the Amended Complaint but denied on all other grounds.


July 17, 2009                      _____/s/_____
Date                              William D. Quarles, Jr.
                                 United States District Judge