```
              IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
KIDDIE ACADEMY DOMESTIC
FRANCHISING LLC,                *

      Plaintiff,                *

           v.                   *    CIVIL NO.:  WDQ-07-0705

FAITH ENTERPRISES DC, LLC,      *
et al.,
                                *
      Defendants.
                                *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

Kiddie Academy Domestic Franchising LLC ("Kiddie Academy") sued Faith Enterprises DC, LLC ("Faith"), Hitter DC, LLC ("Hitter"), MMTD, LLC ("MMTD"), Michael and Kerry Maurer ("the Maurers"), and Thomas and Cathleen Dodge ("the Dodges") for breach of contract.  The Defendants counterclaimed against Kiddie Academy for fraudulent inducement and negligent misrepresentation.  Pending are David Cahn's, Peter Dodge's, and John K. Gardner's motions to withdraw as counsel for the Defendants and Kiddie Academy's motion for partial summary judgment on damages[1] and for attorneys' fees.  For the following

---

[1]  Fed. R. Civ. P. 1 permits the construction of motions "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Because Kiddie Academy has provided evidence of damages and the Defendants have filed a lengthy

reasons, the motions to withdraw will be denied, and the motion for summary judgment on damages and award of attorneys' fees will be granted in part and denied in part.

I.   Background[2]

Kiddie Academy is the franchisor of Kiddie Academy Child Care Learning Centers.  Paper No. 117 at 2.  Faith, Hitter, and MMTD are limited liability companies, and the Maurers and Dodges are their principals.  *Id.*

In 2004, Faith and Hitter began negotiations to buy Kiddie Academy franchises in St. James, New York ("Flowerfield Center") and East Setauket, New York ("East Setauket Center") from Louis Perez.  *Id.*[3]  On January 17, 2005, Kiddie Academy executed 15-year franchise agreements with Faith for the Flowerfield Center[4] and Hitter for the East Setauket Center.[5]  On August 8, 2005,

---

opposition, the "motion to assess damages" will be construed as a motion for partial summary judgment on the issue of damages.

[2]   For the motion for partial summary judgment, the Court will draw inferences from the facts in the light most favorable to the Defendants, the non-moving parties.  *See Matsushita Elec. Indus. Co. v. Zennith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3]   By August 2004, the Maurers and Dodges had received copies of Kiddie Academy's Uniform Franchise Offering Circular.  Pl.'s Reply Ex. 2.

[4]   The Flowerfield Agreement went into effect on March 28, 2005 for a 15-year term.

[5]   *See* Gregg A. Rubenstein Decl. (Paper No. 21) Ex. E, July 17, 2007 [hereinafter *Flowerfield Ag.* and *East Setauket Ag.*].  The Flowerfield and East Setauket franchise agreements were identical in all material respects.  *Id.* ¶ 6.

Kiddie Academy executed a franchise agreement with MMTD for a Center in Islip, New York ("Islip Center").[6]   The Maurers and Dodges personally guaranteed, jointly and severally, all three agreements.[7]

The material terms of the Flowerfield, East Setauket, and Islip Agreements were identical.  Section 7.5 of the agreements required the franchisees to make weekly royalty payments to Kiddie Academy totaling 7.5% of the Centers' gross revenues for the preceding week.[8]  Under Section 7.7, late royalty payments were assessed interest at 1.5% and a 10% late charge.[9]

Section 16.1 permitted Kiddie Academy to terminate the franchise agreement upon notice for "good cause"[10] and to collect "the amount of all future royalties and other fees under the Agreement that otherwise would have been collected from [f]ranchisee . . . plus all reasonable attorneys' fees and court

---

[6]  *See* Pl.'s Mot. for TRO (Paper No. 51) Ex. 1 [hereinafter *Islip Ag.*].

[7]  Flowerfield Ag. 62-63; East Setauket Ag. 62-63; Islip Ag. 64-65.

[8]  Flowerfield Ag. 18; East Setauket Ag. 18; Islip Ag. 19.

[9]  Flowerfield Ag. 18; East Setauket Ag. 18; Islip Ag. 19.

[10]  Section 16.1(a) defines "good cause" for termination to include the abandonment of the franchised business by the franchisee.  Flowerfield Ag. 41; East Setauket Ag. 41; Islip Ag. 42.

costs incurred by [Kiddie Academy] in collecting such amounts."[11]
Upon termination or expiration of the agreement, Section 17.6
required the franchisee to "pay to [f]ranchisor all damages
costs and expenses, including reasonable attorneys' fees,
incurred by [f]ranchisor subsequent to termination or expiration
of th[e] Agreement in obtaining injunctive or other relief for
the enforcement of any provisions of th[e] Agreement."[12]
Section 26.5 also required a franchisor who violated the
Agreement to reimburse "all reasonable costs incurred by [Kiddie
Academy] in pursuing the enforcement of th[e] Agreement . . .
[including] court costs, reasonable attorneys' fees, the
reasonable value of [Kiddie Academy's] employees' time, witness
fees and travel expenses incurred . . . ."

Faith failed to pay $23,637.89 in royalties to Kiddie
Academy between November 2006 and March 2007.  Paper No. 117 at
3.  Hitter failed to pay $85,115.39 in royalties to Kiddie
Academy (1) for the weeks of October 2, 2006 and November 6,
2006, (2) between December 4, 2006 and February 19, 2007, and
(3) from October 2007 through May 2008.  *Id.*  MMTD failed to pay
at least $11,988.92 in royalties to Kiddie Academy.[13]  *Id.*

---

[11]  Flowerfield Ag. 40-41; East Setauket Ag. 40-41; Islip Ag. 42.

[12]  Flowerfield Ag. 49; East Setauket Ag. 49; Islip Ag. 51.

[13]  On April 4, 2008, MMTD paid the past due royalty fees to
Kiddie Academy.  Paper No. 80 at 3.

On March 19, 2007, Kiddie Academy sued the Defendants for breach of contract.  Paper No. 1.  On March 30, 2007, Kiddie Academy sent a letter to inform Faith, the Maurers, and the Dodges that it was terminating the Flowerfield Agreement pursuant to Section 16.1(a) for abandonment of the franchise by Faith.  Pl.'s Reply Ex. 1.  On June 28, 2007, the Defendants answered the complaint and counterclaimed against Kiddie Academy.  Paper No. 17.  On June 17, 2008, the Court denied Kiddie Academy's motion for a temporary restraining order and granted Kiddie Academy's motion to amend its complaint to include Count V, a claim for injunctive relief against MMTD. Paper No. 81.  On October 8, 2008, the Court denied the Defendants' motion to direct reference to bankruptcy court. Paper No. 98.

On July 17, 2009, the Court granted Kiddie Academy's motion for summary judgment on its breach of contract claims against the Defendants.  Paper No. 117.  That same day, David Cahn filed a motion to withdraw as counsel for the Defendants.  Paper No. 121.  On July 30, 2009, Peter Dodge filed a motion to withdraw as counsel for the Defendants.  Paper No. 122.[14]  On September 8, 2009, the Court granted Kiddie Academy's motion for voluntary

---

[14]  On January, 27, 2010, John K. Gardner filed a motion to withdraw as counsel for the Defendants.  Paper No. 148.  Gardner premised his request on the mistaken belief that P. Dodge had already been relieved as counsel by this Court.  *Id*. ¶ 2.

dismissal without prejudice of Count V.  Paper No. 128.  On September 25, 2009, Kiddie Academy filed a motion for partial summary judgment on damages and for attorneys' fees.  Paper No. 129.

Kiddie Academy calculated that it is owed: (1) $41,470.70 in outstanding royalties, interest, and late charges and $654,394.00[15] in lost profits for uncollected future royalties under the Flowerfield Agreement; (2) $134,547.42 in outstanding royalties, interest, and late charges under the East Setauket Agreement; (3) $19,500.00 in uncollected royalties and $2,800.00 in payroll costs resulting from the transfer of the East Setauket Center to Carin Anderson in May 2009; and (4) $101,378.85 in Kiddie Academy employees' time to enforce the franchise agreements.  Susan Wise Decl. ¶ 3, Ex. A, Sept. 25, 2009.

Kiddie Academy also seeks to recover $389,771.77 in attorneys' fees:[16]

---

[15] Kiddie Academy arrived at this amount by calculating the average gross revenues for the Flowerfield Center of the period prior to its closure and then multiplying that by .075 (the royalty rate) for the remaining 13 years of the franchise term. Wise Decl. Ex. A.  It then used a 3% discount rate to calculate the present value of $654,394.00 in future royalties.  *Id*.

[16] Kiddie Academy was represented by Nixon Peabody LLP.  Gregg A. Rubenstein Decl. ¶¶ 1-3, Sept. 25, 2009 [hereinafter *Rubenstein Decl. II*].  Arthur L. Pressman, Andrew P. Loewinger, and Gregg A. Rubenstein, three partners in the Franchise and Distribution Group at Nixon Peabody, were their primary counsel.

| Attorney/Employee & Title | Rate | Years in Practice[17] | Hours |
|---|---|---|---|
| Andrew Loewinger, Partner[18] | $450 (2007)<br>$495 (2008) | 20+ | 11.8 |
| Arthur Pressman, Partner[19] | $525 | 30+ | 405.7 |
| Gregg Rubenstein, Partner[20] | $395 | 6+ | 286 |
| Joseph Ramos, Paralegal | $145 (2007)<br>$155 (2008) | -- | 7.2 |
| Dolores Watson, Paralegal | $135 | -- | 2.6 |
| Robert Meserve, Paralegal | $220 (2007)<br>$245 (2008) | -- | 22.2 |
| Pam Warren, Assistant | $180 (2007)<br>$195 (2008) | -- | 1.4 |
| Stephanie Murphy, Assistant | $185 (2007)<br>$205 (2008) | -- | 1.6 |
| Peter Glennon, Associate[21] | $295 | 3 | 16.8 |
| Christine Vargas, Associate[22] | $420 | 5 | 1.1 |
| Michael Scott, Associate[23] | $365 | 3 | 4.6 |
| Deborah Woodbury, Paralegal | $205 | -- | 0.5 |
| Joanne Santino, Assistant | $225 | -- | 1.0 |
| Connie Sensale, Paralegal | $180 | -- | 3.0 |
| Ronald Rauseo-Ricupero, Associate[24] | $305 | 1 | 10.2 |

*Id.* ¶ 3.  Kiddie Academy provided a chart of its legal expenses, which described the work performed, who performed it, billable hours, and hourly rates.  Rubenstein Decl. Ex. A. [hereinafter *Legal Exp. Summ.*].

[17]  Because this litigation occurred between 2007 and 2008, the Court estimated each attorney's years in practice as of 2008.

[18]  Rubenstein Decl. II ¶ 6; Andrew P. Loewinger Decl. ¶ 3, Sept. 25, 2009.

[19]  Rubenstein Decl. II ¶ 6; Arthur L. Pressman Decl. ¶ 3, Sept. 25, 2009.

[20]  Rubenstein Decl. *II* ¶¶ 4, 6.

[21]  Paper No. 140 ¶ 2.

[22]  Paper No. 141 ¶ 2.

[23]  Paper No. 142 ¶ 2.

[24]  Paper No. 143 ¶ 2.

| Craig Tractenburg, Partner[25] | $525 | 25+ | .3 |
|---|---|---|---|
| Christopher Desiderio, Associate[26] | $375 (2007)<br>$455 (2008) | 4 | 53.9 |
| Lee Harrington, Associate[27] | $375 (2007)<br>$485 (2008) | 9 | 10.4 |
| Stephanie Schinella, Associate[28] | $205 | -- | 1.3 |
| Joanne Santino, Assistant | $225 | -- | .2 |
| Melanie O'Keeffe, Assistant | $195 | -- | 1.8 |
| Bruce Copeland, Partner[29] | $550 | 20+ | .6 |

## II.   Analysis

### A.   Cahn, P. Dodge, and Gardner's Motions to Withdraw as Counsel

The court has wide discretion in ruling on a motion to withdraw. *See Patterson v. Genini Organization, Ltd.*, 2000 WL 1718542, at *2 (4th Cir. Nov. 17, 2000).  "In deciding whether to grant a withdrawal motion, a court may consider the disruptive impact the withdrawal would have." *Id*.  District courts may condition withdrawal of representation on court approval under local rules.  *Towns v. Morris*, 1995 WL 120687, at *2 (4th Cir. Mar. 22, 1995).

---

[25]   Paper No. 144 ¶ 2.

[26]   Paper No. 147 ¶ 3.

[27]   Paper No. 145 ¶ 2.

[28]   This Court requested that Kiddie Academy provide affidavits or declarations establishing how long Stephanie Schinella has been in practice.  Paper No. 139.  Because that information has not been provided and the reasonableness of Schinella's rates cannot be assessed, Kiddie Academy may not recover fees for her work.

[29]   Paper No. 146 ¶ 2.

Under the District of Maryland's Local Rule 101.2.a, counsel for an individual may withdraw with leave of court only if:

> (1) appearance of other counsel has been entered, or (2) withdrawing counsel files a certificate stating: (a) the name and last known address of the client, and (b) that written notice has been mailed to or otherwise served upon the client at least [7] days previously advising the client of counsel's proposed withdrawal and notifying the client either to have new counsel enter an appearance or to advise the Clerk that the client will be proceeding without counsel.

The same requirements apply to withdrawal of counsel for a business entity, except that a business entity may not proceed without counsel and must be advised to "have new counsel enter an appearance or be subject to the dismissal of its claims and/or default judgment on claims against it." D. Md. R. 101.2.b.; *see also Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993). Because the Defendants will be unrepresented if all three counsel withdraw and no attorney has filed the certificate required by the local rules, the motions to withdraw will be denied.

B.   Motion for Partial Summary Judgment on Damages

1.   Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).  "[C]ourts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, [but] summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law."  *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

2.   Breach of Contract Damages

Under *Erie* principles, "state law governs the measure of damages recoverable on a state cause of action." *Walker v. Walker*, 1992 WL 57005, at *4 (4th Cir. Mar. 26, 1992) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  But, under Fed. R. Civ. P. 54(c), a federal court has broad discretion to award appropriate relief and need not limit a party's recovery to the amount demanded in the pleadings.  *See United States v. White*, 366 F.3d 291, 294 (4th Cir. 2004).

In Maryland, the injured party in a breach of contract action "may recover damages for (1) the losses proximately caused by the breach, (2) that were reasonably foreseeable, and (3) that have been proven with reasonable certainty." *Hoang v. Hewitt Ave. Assocs., LLC,* 177 Md.App. 562, 936 A.2d 915, 934 (Md. Ct. Spec. App. 2007) (citations omitted).  Thus, subject to the limitations of remoteness and speculativeness, an injured party may recover damages that will place him in the monetary position he would have occupied if the contract had been properly performed.  *B & P Enterprises v. Overland Equipment Co.*, 133 Md. App. 583, 758 A.2d 1026, 1044 (Md. Ct. Spec. App. 2000).  "These expectation interest damages embrace both losses incurred and gains prevented." *Beard v. S/E Joint Venture,* 321 Md. 126, 581 A.2d 1275, 1278 (1990).

3.  Flowerfield Agreement

Kiddie Academy claims past due royalties and lost profits for future royalties.  Pl.'s Mot. ¶¶ 7-18.  The Defendants contest the calculation of late charges and argue that Kiddie Academy is not entitled to 13-years of lost royalties.  Def.'s Opp. 6-11, 19.

a.  Past Due Royalties and Late Charge Calculation[30]

"The interpretation of a written contract is a question of law for the court," and "Maryland applies an objective interpretation of contracts." *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.,* 405 Md. 435, 952 A.2d 275, 283 (Md. 2008).  "If a contract is unambiguous, the [C]ourt must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation."  *All State Home Mort., Inc. v. Daniel,* 187 Md. App. 166, 977 A.2d 438, 447 (Md. Ct. Spec. App. 2009) (*quoting Nova Research,* 952 A.2d at 283 (Md. 2008)).  To interpret a contract, the Court must "look to the entire language of the agreement, not merely a portion thereof."  *Nova Research*, 952 A.2d at 283.

The Defendants contend that the 10% late charge on overdue royalty payments "applies only to the past-due amounts

---

[30]  Kiddie Academy seeks future royalties for the period from termination of the Flowerfield Agreement on March 30, 2007 to the end of the franchise term on March 28, 2020.

themselves[] and not the interest charged thereon." Def.'s Opp. 19. Section 7.7 of the Flowerfield Agreement states that past due royalty payments shall accrue interest at 1.5% per month and "bear a late charge equal to [10%] of the total payment due . . . ." Flowerfield Ag. 19. Under the plain language of the contract, the 10% late charge applies to the "total payment due," which includes the unpaid royalties plus the accrued interest. Thus, Kiddie Academy's application of the 10% late charge to the total unpaid royalties plus interest was proper, and the Defendants owe $41,470.70 under the Flowerfield Agreement for past due royalties, interest, and late charges.

> b.   Lost Future Royalties

Kiddie Academy claims $654,394 in lost royalties for abandonment of the Flowerfield Center on March 30, 2007 through the remaining 13-years of the franchise term. Pl.'s Mot. ¶ 14. The Defendants dispute Kiddie Academy's entitlement to and its calculation of lost future royalties under the Flowerfield agreement. Def.'s Opp. 2-11.

First, the Defendants argue that they are not liable for lost future royalties under the Flowerfield Agreement because (1) the obligation to pay royalties was contingent upon the Flowerfield Center taking in revenue; (2) Kiddie Academy never terminated the Flowerfield Agreement and thus Section 16.1 does not apply; (3) Kiddie Academy's Uniform Franchise Offering

Circular ("UFOC") did not explain the liability for future royalties after termination.  Def.'s Opp. 2-4.  Under Section 16.1, Kiddie Academy may collect "all future royalties" following its termination of the Flowerfield Agreement for "good cause."  Abandonment of the Flowerfield Center by Faith constitutes good cause for termination under Section 16.1(a).  As payment of future royalties is a post-termination remedy, it is not contingent on the Center taking in revenue.  The UFOC receipt signed by the Maurers and the Dodges shows that they received a copy of the franchise agreement, which included these royalty provisions, as part of the disclosures; thus, they were on notice of their liability for future royalties following abandonment of the franchise.

Next, the Defendants contend that they are not liable because the *ad damnum* clause in the Complaint did not assert a claim for lost future royalties.  Def.'s Opp. 4-6.[31]  As the content of an *ad damnum* clause is a pleading requirement, this is a matter of procedural law governed by federal--not Maryland--law.  "[I]t is well-established that pursuant to Fed. R. Civ. P. 54(c), a court has broad power to 'grant the relief to which

---

[31]   The Defendants also contend that Kiddie Academy is barred from seeking future lost royalties because it did not include those damages in its interrogatory responses.  Def.'s Opp. 4-6. But the plain language of the Flowerfield Agreement awards future royalties in the event of termination, and the Court has broad discretion to award appropriate damages under Fed. R. Civ. P. 54(c).

the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.'" *White*, 366 F.3d at 294 (*citing Minyard Enters., Inc. v. Southeastern Chem. & Solvent Co.,* 184 F.3d 373, 385-86 (4th Cir. 1999)).  Thus, this Court may award future royalties due under the Flowerfield Agreement even if these damages were not listed in the Complaint.

Finally, the Defendants contend that Kiddie Academy has failed to show its future lost royalties with reasonable certainty.  Def.'s Opp. 6-11.[32]  The burden was on Kiddie Academy to prove its claimed lost royalties with reasonable certainty. *David Sloane, Inc. v. Stanley G. House & Assocs. Inc.*, 311 Md. 36, 532 A.2d 694, 697 (Md. 1987).

Courts have generally permitted a franchisor to recover future royalties when the franchisee terminates, repudiates, or

---

[32]  "Reasonably certain" contract damages are those likely to be incurred as a consequence of the breach, not based on speculation or conjecture, and whose probable amount is known. *See Hoang*, 936 A.2d at 935; *Roebuck v. Steuart*, 76 Md. App. 298, 544 A.2d 808, 815 (Md. Ct. Spec. App. 1988).  "[I]f the fact of damage is proven with certainty, the extent or the amount thereof may be left to reasonable inference." *David Sloane, Inc. v. Stanley G. House & Assocs., Inc.*, 311 Md. 36, 532 A.2d 694, 696 (Md. 1987) (*quoting M&R Contractors & Builders, Inc. v. Michael*, 215 Md. 340, 138 A.2d 350, 355 (Md. 1958)).  The Defendants have also raised several arguments as to the appropriate amount of the future royalty payments.  But there only need be reasonable certainty as to the fact and not the exact amount of damages.

abandons the franchise.[33]  But courts have been hesitant to award future royalties under a multi-year franchise agreement when there is possible double-recovery,[34] uncertainty in the existence and amount of future royalties,[35] and inability to determine what portion of lost royalties were actually lost profits and not costs attendant to maintaining the franchise relationship.[36]

---

[33]  *See* Robert L. Ebe, David L. Steinberg, & Brett R. Waxdeck, *Radisson and the Potential Demise of the Sealy-Barnes-Hinton Rule*, 27 Franchise L.J. 3, 5 (2007) (discussing the trends in awards of future royalties in franchise cases).

[34]  *Postal Instant Press v. Sealy*, 43 Cal. App. 4th 1704, 1713 n.5 (Cal. Ct. App. 1996) (noting the problem of double recovery when the breaching franchisee pays future royalties for the same period that a replacement franchisee is paying royalties to the franchisor).

[35]  *Id.* (recognizing the difficulties estimating future profits "in a field as volatile as printing and reproduction").  The Defendants argue that future royalties are speculative because the Flowerfield Center was failing when it closed in March 2007.  Def.'s Opp. 8.  But a mere decline in gross revenues does not show that business failure was inevitable even absent abandonment of the Center by Faith.  *See Am. Speedy Printing Centers, Inc. v. AM Mktg., Inc.*, 69 Fed. Appx. 692, 699 (6th Cir. 2003) ("To create uncertainty as to the fact of future profits . . . [the Defendant] must provide evidence that [the franchise] was likely to fail in some way, or become unprofitable, such that sales would end but without any breach of the franchise agreement.  [The Defendant's] mere suggestion that the continued success of the business was difficult to predict, or even [the witness's] statement that business had ceased operations is not sufficient to create uncertainty as to the fact of future profits/royalties.").

[36]  *See In re Mid-America Corp.*, 159 B.R. 48, 55 (Bankr. M.D. Fla. 1993) (lost royalties damages too speculative because of testimony that the franchisor incurred unknown expenses to service its franchisees; those expenses would have decreased the lost profits from breach of the franchise agreement).

Almost three years have passed since Faith abandoned the Flowerfield Center in March 2007, and Kiddie Academy has not located a replacement franchisee.[37]  But, at some time in the next 11 years, it may well secure a replacement franchisee.[38] Accordingly, double-recovery is likely if Kiddie Academy is awarded future royalties for the years remaining on the franchise term.  Double recovery of contract damages is not permitted under Maryland law.  *See Johnson v. Oroweat Foods Co.*,

---

[37] Generally, the non-breaching party must mitigate its damages by making "all reasonable efforts to minimize the loss sustained from the breach." *Barry Sch. v. Patch*, 401 Md. 497, 933 A.2d 382, 391 (Md. 2007) (*quoting Circuit City v. Rockville Pike,* 376 Md. 331, 829 A.2d 976, 990 (Md. 2003)).  But the burden is on the Defendants to show that the losses suffered by the injured party may have been avoided by the exercise of reasonable diligence.  *See Hopkins v. Silber*, 141 Md. App. 319, 785 A.2d 806, 816 (Md. Ct. Spec. App. 2001); *Schlossberg v. Epstein*, 73 Md. App. 415, 534 A.2d 1003, 1008 (Md. Ct. Spec. App. 1988). Here, the Defendants argue that Kiddie Academy should have located a replacement franchisee because it has secured many new franchisees over the past four years.  Def.'s Opp. 9-10.  The number of new franchisees nationally does not show the likelihood that Kiddie Academy will obtain a substitute franchisee under a similar contract for the Flowerfield location.  Further, Kiddie Academy's Chief Development Officer, Gregory Helwig, has testified that Kiddie Academy "has continued all its regular efforts to locate a replacement franchisee" but has been unsuccessful. Paper No. 138 (Gregory Helwig Decl. ¶¶ 2-3, Oct. 26, 2009).  Kiddie Academy has taken reasonable steps to mitigate its damages following the termination of the Flowerfield Agreement.

[38]  Kiddie Academy has not argued that it will be unable to secure a replacement franchisee during the remaining 11 years of the franchise term.

785 F.2d 503, 506–508 (4th Cir. 1986).[39]  Because damages that would enable double recovery may not be awarded, Kiddie Academy may only recover royalties for the period from termination in March 2007 through the date of judgment awarding future royalties.[40]

To calculate future royalties--a form of lost profits--this court must consider the losses caused by the breach minus the costs or other losses that the injured party has avoided by not having to perform the contract.[41]  Damages must be determined "by reference to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances." *Id.* (*quoting* 22 Am. Jur. 2d *Damages* § 25).

Here, Kiddie Academy has calculated its lost future royalties by averaging the gross revenues for the Flowerfield

---

[39]  The damages awarded should not put the Plaintiff "in a better position than he would have enjoyed in the absence of a breach." *Johnson*, 785 F.2d at 507.

[40]  If future damages are awarded and a replacement franchisee is secured before the date of that judgment, the lost royalties award will be reduced accordingly.

[41]  *See David Sloane, Inc. v. Stanley G. House & Assocs., Inc.*, 311 Md. 36, 532 A.2d 694, 697 (Md. 1987).  If the fact of damages has been proven, "mere difficulty in ascertaining the amount of damage is not fatal," and "mathematical precision in fixing the exact amount is not required." *Thomas*, 2009 WL 4560667 at *11 (internal quotations omitted).  But, "[t]he evidence must . . . lay some foundation enabling the fact finder to make a fair and reasonable estimate of the amount of the damage." *Id.* (*quoting Della Ratta Inc. v. Am. Better Cmty.*, 38 Md.App. 119, 380 A.2d 627, 641 (Md. Ct. Spec. App. 1977)).

Center collected over the 3-years before its closure.  But only a final calculation of the gross royalties owed was provided in an exhibit without any of the underlying data--i.e., annual or quarterly revenue figures, past royalties collected, or other supporting documentation.[42]  To determine whether revenues under past owners should be part of the future royalty calculation, this Court would have to review that data.

Kiddie Academy also failed to provide an estimate of the costs or other losses that it has avoided by not having to perform the Flowerfield Agreement.  Because Kiddie Academy has not enabled this Court to make a fair and reasonable estimate of the amount of future royalties, summary judgment on this claim must be denied.

### 4.   Islip Agreement

Under the Islip Agreement, MMTD agreed to pay (1) 1.5% interest per month and a late charge of 10% on all unpaid royalty fees and (2) all costs that Kiddie Academy incurred enforcing its rights under that agreement.  When this suit was

---

[42]  By using data from the last three years, Kiddie Academy relied on revenues realized by previous owners of the franchise to calculate expected revenues to be generated by Faith.  Courts have recognized that "it seems unduly speculative to rely on the profits realized by previous owners of a franchise business in calculating the profit expected to be generated by a new owner of the business."  *ATC Healthcare Services, Inc. v. Personnel Solutions, Inc.*, 2006 WL 3758618, at *12 (E.D.N.Y. Dec. 19, 2006).

filed on March 19, 2007, MMTD owed Kiddie Academy $11,988.92 in unpaid royalties, interest, and late charges.  Because MMTD has paid its past due royalties and associated fees, Kiddie Academy is only entitled to recover the attorneys' fees and costs incurred pursuing that claim.

> 5.   East Setauket Agreement

The Defendants have not opposed the $134,547.42 in unpaid royalties, interest, and late charges due to Kiddie Academy under the East Setauket Agreement.  But they have argued that Kiddie Academy produced insufficient evidence to show that the $19,500 waived royalty fee and $2,800 in payroll assistance were necessary to "induce" a new franchisee to take over the East Setauket Center.  Def.'s Opp. 20.[43]  Under the East Setauket Agreement, Hitter agreed to pay the reasonable costs that Kiddie Academy incurred to enforce that agreement.  Because Kiddie Academy merely listed royalty waiver and payroll assistance expenses without showing that they were incurred to obtain a new franchisee,[44] it has not shown that these were reasonable costs

---

[43]  Kiddie Academy's reply did not address this argument.

[44]  The Defendants' motion for assessment of damages and attorneys' Fees alleges that "[t]o induce the new franchisee to begin operating at Hitter's previous location, Kiddie Academy was required to waive royalty fees from the new franchisee in the amount of $19,500 and provide the new franchisee with payroll assistance totaling $2,800."  Def.'s Mot. ¶ 30.  But these allegations are not supported by evidence.

to enforce the agreement.  Thus, Kiddie Academy may recover only the $134,547.42 in unpaid royalties and associated fees plus its reasonable attorneys' fees.

   6.   Employees' Time

Section 26.5 of all the franchise agreements states that "the reasonable value of Franchisor's employees' time" spent enforcing those agreements is a recoverable expense.  To show the value of time spent on this case by its employees, Kiddie Academy provided an affidavit from Chief Financial Officer Susan Wise, stating that it incurred $101,378.85 in "payroll expenses . . . pursuing enforcement of its franchise agreements."  Wise Decl. ¶ 4, Ex. B.  The Defendants have objected to this computation of employees' time, arguing that it lacks evidentiary support.  Def.'s Obj. 20.  Because Kiddie Academy has provided only a single figure summarizing its payroll expenses, the reasonableness of those expenses cannot be determined, and summary judgment must be denied.

   C.   Motion for Attorneys' Fees

"In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual awarding of attorneys' fees but also the method of determining those fees." *Dunkin' Donuts Inc., v. Guang Chyi Liu,* 2002 WL 31375509, at *2 (E.D. Pa. Oct.17, 2002) (*citing Northern Heel Corp. v. Compo Industries, Inc.,* 851 F.2d 456, 475 (1st Cir.

21

1988)).  "A contractual obligation to pay attorneys' fees generally is valid and enforceable in Maryland" unless there has been "misconduct or fraud, overreaching, misrepresentation, or other grounds for voiding the contract." *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.*, 380 Md. 285, 844 A.2d 460, 477-78 (Md. 2004).  The Court must examine a party's fee request for reasonableness, even absent a contract provision requiring that fees be reasonable.  *Id.* at 478.[45]

---

[45] "The reasonableness of attorneys' fees is generally a factual determination within the sound discretion of the trial judge." *Atlantic Contracting*, 844 A.2d at 478. To determine the reasonableness of attorneys' fees, the court should ordinarily use "the lodestar approach--determining the number of hours reasonably expended on the litigation, then multiplying those hours by a reasonable hourly rate." *Stevenson v. Branch Banking & Trust Corp.*, 159 Md. App. 620, 861 A.2d 735, 761 (Md. Ct. Spec. App. 2004).  The reasonableness of rates and hours depends upon:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or the lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Rauch v. McCall*, 134 Md. App. 624, 761 A.2d 76, 85 (Md. Ct. Spec. App. 2000)(*quoting Holzman v. Fiola Blum, Inc.*, 125 Md. App. 602, 726 A.2d 818, 835-36 (Md. Ct. Spec. App. 1999)).

The moving party must prove that its attorneys' fees are reasonable by presenting competent evidence, which "specifie[s] the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged." *Rauch*, 761 A.2d at 84; *see also Atlantic Contracting*, 844 A.2d at 478. "[I]t is incumbent upon the party seeking recovery to present detailed records that contain the relevant facts and computations undergirding the computation of charges." *Id*. at 84-85.[46]

Appendix B of the Local Rules for the District of Maryland also provides "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." These rules apply when the prevailing party is entitled by contract to reasonable attorneys' fees based on a computation of hours and rates and not a fixed percentage or other formula. To guide the Court in awarding fees, the Rules provide a range of reasonable rates for legal service based upon experience and qualifications. D. Md. R. Appx. B § 3.

---

[46] "Without such records, the reasonableness, *vel non*, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence." *Rauch*, 761 A.2d at 85. "[A] mere compilation of hours multiplied by fixed hourly rates or bills issued to the client" is insufficient. *Id*. at 84.

a.   Reasonableness of Hours

Reductions in hours are appropriate when there is "inadequate documentation of hours and work that is duplicative, excessive, unnecessary, or unsuccessful." *Stevenson*, 861 A.2d at 761.  Kiddie Academy provided a table summarizing the work performed, by whom, and the number of hours expended.  Legal Exp. Summ. 1-3.[47]  Although the Defendants argue that this is not the "best evidence" of the hours spent by Kiddie Academy's attorneys, Maryland law allows recovery even if there is not a "precise delineation" of time spent and expenses incurred.  *See Diamond Point v. Wells Fargo*, 400 Md. 718, 929 A.2d 932, 957 (Md. 2007).

When the documentation of hours is vague or incomplete, the district court may reduce the award accordingly.  *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780 (D. Md. 2000). Because the Kiddie Academy attorneys' time entries are imprecise, the hours will be reduced when: (1) multiple partners or assistants have billed for the same activity;[48] (2) the number of hours spent on a task appears excessive; and (3) the

---

[47]  Rubenstein's declaration testifies to the accuracy of that the table.  *See* Rubenstein Decl. II ¶ 2.

[48]  In some cases, when an activity might warrant review by multiple attorneys or the number of hours expended seems to indicate a division of labor, the hours have been allowed.

24

description of the activity is insufficient.  As a result of these reductions, the charged hours for the Kiddie Academy lawyers and employees will be as follows:

| Task | Attorney/Employee | Recoverable Hours |
|---|---|---|
| Preparation of Demand Letter to Defendants and Client Counseling | Loewinger | 3.8 |
| Preparation, Filing, and Service of Complaint and Summonses | Pressman | 6.1 |
| | Ramos | 4.5 |
| | Watson | 2.6 |
| Activities Concerning Initial Stage of Litigation (including communications with opposition counsel)[49] | -- | -- |
| Review of Answer & Counterclaims | Pressman | 3.7 |
| Research & monitoring of Defendants' Third-Party litigation and review of witnesses | Pressman | 20.1 |
| | Rubenstein | 7.2 |
| | Meserve | 22.2 |
| Motion to Dismiss Counterclaims | Rubenstein | 40.7 |
| | Pressman | 10.3 |
| Response to Motion to Amend Counterclaims | Rubenstein | 4.3 |
| Written Discovery (responses and review of produced material) | Pressman | 27.4 |
| | Rubenstein | 35.1 |
| | Glennon | 4.2 |
| Litigation Time (status reports, correspondence drafting, review of court materials, and research not associated with particular motion)[50] | -- | -- |
| Activities concerning deposition preparation (review of documents, attendance at seven depositions) | Pressman | 61.0 |
| | Rubenstein | 35.4 |
| | Sensale | 3.0 |
| Settlement Conference (including negotiations, preparation, communications, and drafting)[51] | Pressman | 55.0 |
| Eviction Action | Pressman | 13.3 |

---

[49]   This description is insufficiently precise to award hours for these activities.

[50]   This description is insufficiently precise to award hours for these activities.

[51]   The Defendants contend that Kiddie Academy "unreasonably and unnecessarily prolonged litigation in this case" because it refused to settle the case.  Def.'s Opp. 14-16.  But they cite no authority for this proposition, and this Court does not find that Kiddie Academy's decision to litigate rather than settle was unreasonable.

| Amended complaint, preliminary injunction, and temporary restraining order | Pressman | 57.2 |
| | Glennon | 12.6 |
| | Rauseo-Ricupero | 10.2 |
| Hitter Bankruptcy (research, drafting, and communication) | Pressman | 35.2 |
| | Desiderio | 53.9 |
| | Harrington | 10.4 |
| | O'Keefe | 1.8 |
| Motion for Summary Judgment (research, drafting, filing, reply) | Rubenstein | 88.5 |
| | Pressman | 27.0 |

b.   Reasonableness of Hourly Rates

"Reasonableness of fees is a factual determination within the sound discretion of the court." *Baltimore v. Guttman*, -- A.2d--, 2010 WL 6748, *9 (Md. Ct. Spec. App. Jan. 4, 2010).  The Local Rules establish the following presumptively reasonable fee ranges:

(a) Lawyers admitted for less than 5 years: $150-190;
(b) Lawyers admitted for 5 to 8 years: $165-250;
(c) Lawyers admitted for 9 to 14 years: $225-300;
(d) Lawyers admitted for 15 years or more: $275-400;
(e) Paralegals and law clerks: $95-115.

D. Md. R. Appx. B § 3.[52]

Kiddie Academy has requested hourly rates far in excess of those suggested by the Local Rules.  This upward departure is not justified by the novelty or difficulty of this case--a relatively routine contract dispute--and no special legal skill was required to litigate it.  Pressman and Loewinger have testified about their extensive experience in the area of

---

[52]   "These rates are intended to provide practical guidance to lawyers and judges," and "[t]he facts established by case law obviously govern over them."  *Id.* at n.6.

franchise law, having published numerous articles and spoken to professional groups on several occasions.[53]   This Court acknowledges the superior experience of Pressman and Loewinger and their many years of practice, but these do not justify fees above the suggested range.[54]

Given the experience of the attorneys and the nature of this dispute, this Court finds the following rates are reasonable:

| Attorney/Employee | Rate Requested | Years in Practice[55] | Reasonable Rate |
|---|---|---|---|
| Andrew Loewinger, Partner | $450 (2007) $495 (2008) | 20+ | $400 |
| Arthur Pressman, Partner | $525 | 30+ | $400 |
| Gregg Rubenstein, Partner | $395 | 6+ | $250 |
| Peter Glennon, Associate | $295 | 3 | $180 |
| Ronald Rauseo-Ricupero, Associate | $305 | 1 | $150 |
| Christopher Desiderio, Associate | $375 (2007) $455 (2008) | 4 | $190 |
| Lee Harrington, Associate | $375 (2007) $485 (2008) | 9 | $275 |
| Paralegals & Assistants | $135-$245 | -- | $115 |

---

[53]   Pressman Decl. ¶ 3; Loewinger Decl. ¶ 3.

[54]   To show the reasonableness of the rates charged and hours expended in this case, Kiddie Academy submitted the affidavit of Charles E. Rosolio, a principal at the law firm of Miles & Stockbridge P.C. in Maryland.   Paper No. 131.   The Defendants have challenged Rosolio's estimate of the "customary rates" charged for franchise work in Maryland because he worked for "two of the largest firms in Maryland, and their rates have not been demonstrated to be representative."   Def.'s Opp. 17.   To counter Rosolio's testimony, the Defendants submitted the affidavit of their attorney, David L. Cahn, the managing member of Cahn & Rifkin, LLC.   Paper No. 135, Ex. 1 (David L. Cahn Decl. ¶ 1, October 13, 2009).   Cahn provided significantly lower estimates of the customary hourly rates charged by attorneys and law clerks in franchise matters.   *Id.* ¶ 15.

[55]   Because this litigation occurred between 2007-08, the Court estimated the attorneys' years in practice as of 2008.

c.    Loadstar Calculation

With the hour and rate adjustments discussed above, Kiddie Academy is entitled to the following attorneys' fees:

| Attorney/Employee | Reasonable Rate | Recoverable Hours | Fees |
|---|---|---|---|
| Andrew Loewinger, Partner | $400 | 3.8 | $1,520.00 |
| Arthur Pressman, Partner | $400 | 316.3 | $126,520.00 |
| Gregg Rubenstein, Partner | $250 | 211.2 | $52,800.00 |
| Peter Glennon, Associate | $180 | 16.8 | $3,024.00 |
| Ronald Rauseo-Ricupero, Associate | $150 | 10.2 | $1,530.00 |
| Christopher Desiderio, Associate | $190 | 53.9 | $10,241.00 |
| Lee Harrington, Associate | $275 | 10.4 | $2,860.00 |
| Paralegals & Assistants | $115 | 34.1 | $3,921.50 |
| | | TOTAL | $ 202,416.50 |

III. Conclusion

For the reasons stated above, the motions to withdraw as counsel by Cahn, P. Dodge, and Gardner will be denied.  Kiddie Academy's motion for partial summary judgment on damages will be granted in part and denied in part, and its motion for attorneys' fees will be granted in part and denied in part.

Faith, the Maurers, and the Dodges will pay $41,470.70 for past due royalties, interest, and late charges under the Flowerfield Agreement.  Hitter, the Maurers, and the Dodges will pay $134,547.42 for past due royalties, interest, and late charges under the East Setauket Agreement.  The Defendants will pay $202,416.50 for attorneys' fees.

February 22, 2010                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge

28